**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| **CRAIG HORNSBY and PRESTIGE NISSAN, INC.**, <br><br> Plaintiffs, <br><br> v. <br><br> **THOMASVILLE NOTEHOLDER, LLC, FLOWERS AUTOMOTIVE, LLC, and DAVID FLOWERS,** <br><br> Defendants. | Civil Action No. 7:14-CV-78 (HL) |

**ORDER**

This matter came before the Court on July 29, 2014, for a hearing on the Amended Motion of Plaintiffs for Temporary Restraining Order, Preliminary and Permanent Injunction. (Doc. 8). Upon consideration of the oral and written arguments submitted by the parties, the Court finds that Plaintiffs have not established a substantial likelihood of success on the merits of any of their claims. Accordingly, Plaintiffs' motion (Doc. 8) is denied. Plaintiffs' May 21, 2014 Motion for Temporary Restraining Order (Doc. 6) is denied as moot.

**I.   Facts and Procedural Background**

Plaintiff Craig Hornsby ("Hornsby") issued the promissory note at the heart of this litigation to American Banking Company, d/b/a Ameris Bank ("Ameris"), on October 17, 2006. (Doc. 7-1). Hornsby borrowed $2,587,759.08 for the construction of Prestige Nissan, Inc. ("Prestige"), a corporation owned by

Hornsby's wife. (Doc. 7, ¶¶ 2, 8). Prestige held the title to the real estate and signed a Deed to Secure Debt in favor of Ameris. (Doc. 7, ¶ 8; Doc. 11, Ex. 1). By the terms of the promissory note, for the first eleven months, Hornsby was to make interest only payment to Ameris. (Doc. 7, ¶ 9; Doc. 7-1, ¶ 7). Thereafter, he owed monthly payments of $20,450.94. (Doc. 7, ¶ 9; Doc. 7-1, ¶7). On the forty-eighth month, or September 16, 2011, Hornsby owed a single balloon payment of the remaining balance. (Doc. 7, ¶ 9; Doc. 7-1, ¶ 7).

In addition to the terms of repayment, the promissory note contains two waiver provisions in paragraph 13(A) that are pertinent to this litigation:

> (1) You [Ameris] may renew or extend payments on this Note, regardless of the number of such renewals or extensions; . . .
>
> (5) You [Ameris] may enter into any sales, repurchases or participations of this Note to any person in any amounts and I [Hornsby] waive notice of such sales, repurchases or participations.

(Doc. 7-1 ¶ 13). This paragraph further waives notice of acceleration, notice of intent to accelerate, and notice of dishonor.

Prior to the loan reaching maturity, Prestige sold the car dealership to Flowers Automotive, LLC ("Flowers Automotive"), which is owned by Defendant David Flowers ("Flowers"). (Doc. 7, ¶¶ 5, 10). The parties signed a written purchase agreement on April 14, 2009, whereby Prestige transferred all of the assets of the dealership to Flowers Automotive, with the exception of the real

estate and the building. (Doc. 7, ¶¶ 10-12). On July 10, 2009, Prestige and Flowers Automotive entered into a five year written lease agreement, beginning July 10, 2009 and ending July 9, 2014. (Doc. 7, ¶ 13; Doc. 7-2). From July 2010 until December 2010, Flowers Automotive made lease payments to Hornsby. (Doc. 7, ¶ 15). Hornsby then made payments to Ameris. (Doc. 7, ¶ 15). Later, on December 23, 2009, Hornsby and Prestige executed an Assignment of Leases and Rents, which dictated that from that point forward Flowers Automotive would make lease payments directly to Ameris. (Doc. 7, ¶ 16; Doc. 10, Ex. 1).

Prior to the expiration of the promissory note on September 16, 2011, Hornsby contacted Ameris to inquire about refinancing the note. (Doc. 7, ¶ 17). Hornsby alleges that while the bank was receptive to the possibility of refinancing the loan, the bank first required financial information from Flowers Automotive. (Doc. ¶ 17). Over the next two years, Ameris entered into a series of short term renewal agreements extending the maturity date for the loan. (Doc. 7-7). The final agreement, entered into December 17, 2013, extended the maturity date to January 5, 2014. (Doc. 7, ¶ 21; Doc. 7-7, p. 15). Hornsby e-mailed representatives at Ameris on December 31, 2013, February 1, 2014, and February 12, 2014, inquiring about future renewal terms. (Doc. 7, ¶¶ 24-25; Doc. 7-4, pp. 2, 3-4). He received no response from the bank. (Doc. 7, ¶ 24-25).

On February 3, 2014, Flowers sent a letter to Hornsby notifying him that Flowers Automotive was exercising the right to extend the existing lease for

3

another five year term. (Doc. 7, ¶ 26; Doc. 7-5). Then, on February 12, 2014, Flowers, as the sole member of Thomasville Noteholder, LLC ("Thomasville Noteholder") purchased the debt, the Deed to Secure Debt, and the Assignment of Leases and Rents from Ameris. (Doc. 7-7). The assignment was recorded April 7, 2014.

Hornsby was not aware of the transfer until he received a letter dated May 2, 2014, from counsel for Thomasville Noteholder providing notice of the intent to foreclose on June 3, 2014. (Doc. 7-6). When it became apparent that Thomasville Noteholder was not interested in renewing the note and planned to proceed with the foreclosure sale, Plaintiffs initiated this lawsuit on May 21, 2014. (Doc. 1). Along with the Complaint, Plaintiffs filed their first Motion for Temporary Restraining Order, Preliminary and Permanent Injunction (Doc. 6), seeking intervention by the Court to forestall the foreclosure sale. The Court contacted Plaintiffs' counsel to inquire about scheduling a hearing on the motion. Plaintiffs' counsel informed the Court that the parties were working toward a resolution and that a hearing was not necessary at that time. That motion thus is moot.

Subsequently, negotiations between the parties deteriorated, and Defendant Thomasville Noteholder, LLC ("Thomasville Noteholder") again notified Plaintiffs of its intent to foreclose on August 5, 2014.[1] Plaintiffs' filed their

---

[1] Thomasville Noteholder placed a foreclosure advertisement in June 2014, for a July 1, 2014 sale, and the note was sold. After counsel for Plaintiffs contacted

Recast Complaint for Damages, Injunction, and Equitable Relief on July 25, 2014 (Doc. 7), along with an Amended Motion of Plaintiffs for Temporary Restraining Order, Preliminary and Permanent Injunction (Doc. 8), requesting that the Court delay the impending foreclosure sale to provide Plaintiffs with additional time to either secure new financing or to effectuate sale of the property.

## II. Analysis

Plaintiffs seek the entry of a temporary restraining order or a preliminary injunction to prevent Thomasville Noteholder from exercising the power of sale contained in the deed to secure debt. As the moving party, Plaintiffs bear the burden of establishing (1) that they have a substantial likelihood of succeeding on the merits of their claims; (2) that unless the Court grants injunctive relief Plaintiffs will suffer irreparable injury; (3) that the threatened injury outweighs the harm the injunction will inflict on Defendants; and (4) that entry of injunctive relief will not be adverse to the public interest. Schiavo, ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005); Seigel v. Lepore, 234 F.3d 1163, 1176 (11th Cir. 2000) (*en banc*). "'The preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant "clearly carries the burden of persuasion" as to the four prerequisites.'" Zardui-Quintana v. Richard, 768 F.2d

---

Thomasville Noteholder's attorneys to question the sale because Plaintiffs did not receive notification, Thomasville Noteholder agreed to rescind, or cancel, the sale and to advertise again in July for the August sale.

5

1213, 1216 (11th Cir. 1985) (quoting United States v. Jefferson County, 720 F.2d 1511, 1519 (11th Cir. 1983)).

Plaintiffs here present three theories of recovery: (1) intentional harm; (2) temporary mutual departure from contract; and (3) fraudulent concealment. In order to obtain the injunctive relief requested, Plaintiffs first must demonstrate the likelihood of succeeding on any one claim.

### 1. Intentional harm

Plaintiffs concede that there is no Georgia case law on point for the construction of this claim. Plaintiffs thus urge the Court to recognize the existence of a "*prima facie* tort claim," a remedy accepted in other jurisdictions that is intended "for persons harmed by acts that are intentional and malicious but otherwise lawful which fall outside of the rigid traditional intentional tort categories." 74 Am. Jur. 2d Torts § 46. A claim of this sort requires "(1) an intentional lawful act by the defendant; (2) defendant's intent to injure plaintiff; (3) an absence of justification or an insufficient justification for defendant's act; and (4) injury to plaintiff." In re President Casinos, Inc. v. Columbia Sussex Corp., 419 B.R. 394, 401 (E.D. Mo. 2009).

The Court need not reach a decision about whether or not Plaintiffs can bring a *prima facie* tort claim under Georgia law because there simply is no evidence of any wrongdoing on the part of Defendants in this case. Thomasville Noteholder made a valid purchase of the Deed to Secure Debt from Ameris.

6

Upon the underlying debt reaching maturity, Thomasville Noteholder then moved to exercise the contractual right to call the note due and to initiate foreclosure proceedings. Further, while Plaintiffs may argue that Flowers and Flowers Automotive in some capacity undermined Plaintiffs' ability to permanently extend the life of the loan with Ameris by not providing the requested financial information, neither Flowers nor Flowers Automotive was under any contractual or other duty to provide any financial documentation. The Court agrees with Defendants that "the Plaintiffs' evidence and allegations show only that Defendants acted with the intent to further their own financial and business interests." (Doc. 11, p. 7). There is no evidence that in so doing Defendants intended to injure Plaintiffs, maliciously or otherwise. Accordingly, Plaintiffs are not likely to succeed on the merits of this claim.

### 2. Mutual departure from contract

Plaintiffs next argue that Defendants should be enjoined from moving forward with the foreclosure sale because there is evidence that the parties mutually departed from the terms of the contract. Under O.C.G.A. § 13-4-4, when the parties to a contract depart from the terms of the contract and continue to pay or receive payment, before returning to the strict terms of the original agreement, the party wishing to rely on the exact terms first must provide notice of the intent to do so. According to Plaintiffs, Defendants varied the terms of the contract by accepting post-maturity lease payments from Flowers Automotive. The debt

7

reached maturity on January 5, 2014, yet Thomasville Noteholder continued receiving lease payments from Flowers Automotive for March, April, and May.

Ordinarily, the question of whether the conduct of the parties mutually departed from the terms of contract is a question of fact for a jury. Snyder v. Time Warner, Inc., 179 F. Supp. 2d 1374, 1380 (N.D. Ga. 2001). However, in this case there is no evidence that the parties strayed from the terms of the underlying contract. Because the loan had reached maturity, any lease payments received by Thomasville Noteholder from Flowers Automotive under the Assignment of Leases and Rents were applied not toward any monthly installment due on the note but toward the balloon payment. Acceptance of these partial payments does not evidence mutual departure and does not alter the date of maturity. Crawford v. First Nat'l Bank of Rome, 137 Ga. App. 294, 296 (1976); Philyaw v. Fulton Nat'l Bank, 139 Ga. App. 28, 30 (1976) ("The entire debt being due, the mere acceptance of part-payment thereon does not amount to a waiver of the prior default or undo the maturity remainder of the indebtedness.") Plaintiffs therefore have failed to meet the burden of proving a likelihood of success on this claim.

### 3. Fraudulent concealment

Plaintiffs contend that Defendants owed a duty upon acquisition of the security deed to notify Plaintiffs that they did not intend to renew the note. Failure to do so amounted to fraudulent concealment and negatively impacted Plaintiffs' ability either to secure new financing or to locate an interested buyer. Under

O.C.G.A. § 23-2-53, "[s]uppression of a material fact which a party is under an obligation to communicate constitutes fraud." See also Pinkerton & Laws Co. v. Roadway Express, Inc., 650 F. Supp. 1138, 1147 (N.D. Ga. 1986) ("A claim for fraud may be founded on an allegation of nondisclosure of material information as well as affirmative misrepresentation provided the allegedly defrauding party was obligated to disclose the suppressed information.") Whether or not a duty exists may be determined either by the confidential nature of the relationship of the parties or based on the particular circumstances. O.C.G.A. § 23-2-53. Concealment may "amount to fraud when direct inquiry is made, and the truth evaded." Am. Petroleum Prods. v. Mom & Pop Stores, Inc., 231 Ga. App. 1, 5 (1998). However, "[m]ere concealment of a material fact, unless done in such a manner as to deceive and mislead, will not support an action." O.C.G.A. § 51-6-2(a).

There is no factual basis for Plaintiffs' fraudulent concealment claims. Under the terms of both the Promissory Note and the Deed to Secure Debt, neither Ameris nor Thomasville Noteholder had a duty to inform Plaintiffs of the assignment. In fact, the specific terms of the Promissory Note provide that Plaintiffs waived the right to receive notice of the assignment. Plaintiffs attached a document entitled "Application Disclosure / Balloon Payment Mortgage" to their post-hearing brief and supporting affidavit which states that the bank will provide notice of the estimated amount of the balloon payment at least ten days prior to

9

the maturity date. (Doc. 12, p. 10). However, this disclosure statement relates to Loan Number 7400000216-103. The note in question here is Loan Number 7320000410-101. Therefore, there is no evidence that Plaintiffs were entitled to any advance notice of the note's maturity other than the date listed on the short-term renewal agreement.

Ameris extended the last renewal to Plaintiffs on December 17, 2013, changing the maturity date to January 6, 2014. Thomasville Noteholder acquired the note on February 12, 2014, after the loan entered default status. Plaintiffs were aware of the projected maturity date and knew that upon maturity they owed a final balloon payment. Although the bank extended short term renewals to Plaintiffs over an almost two year period, the bank was under no obligation to continue to grant those extensions. Nor was Thomasville Noteholder obligated to issue a renewal upon purchase of the note. As the new creditor, Thomasville Noteholder was well within its contractual rights to institute foreclosure proceedings with no notice to Plaintiffs other than that required by law.

Plaintiffs have failed to meet the threshold prerequisite of persuading the Court that there is a substantial likelihood that they will succeed on the merits of any of the claims they assert. Plaintiffs accordingly are not entitled to entry of a temporary restraining order or a preliminary injunction.

### III.  Conclusion

Based on the foregoing, Plaintiffs' motion for temporary restraining order and preliminary injunction (Doc. 8) is denied. Plaintiffs' May 21, 2014 motion (Doc. 6) is denied as moot.

**SO ORDERED** this 1st day of August, 2014.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

aks